■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAYMOND ALI, Also Known as HARRY ALI, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Cohen, J.), rendered December 9, 1987, convicting him of manslaughter in the second degree and criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and a new trial is ordered.

The defendant was convicted for the reckless killing of his brother-in-law during an afternoon of socializing with him and three of his friends who were previously unknown to the defendant. The testimony elicited at trial revealed that at some point while the fivesome was seated around a table, the men became engaged in a discussion with respect to their having been the victims of street muggings. The defendant took out a gun, displayed it to his companions and avowed that he would not fall prey to a mugger again. The defendant held the gun for several minutes, during which he "play[ed] with it", apparently ignored the others' requests that he put the gun away, and cocked the hammer of the gun. Soon thereafter, the defendant's brother-in-law was shot. While none of the other three men witnessed the actual shooting, one testified to having seen the weapon in the defendant's hand immediately thereafter and the deceased was overheard castigating his brother-in-law: "I told you * * * not to play around with that * * * gun". The defendant left the scene after the shooting and was apprehended by the police 16 months later.

The defendant testified that it was his brother-in-law who originally produced the gun, denied that he committed the shooting, attempted to explain his departure from the scene by relating difficulties with his immigration status, and posited that the decedent's three friends, all of whom were related, had falsely accused him, the stranger to the group, of the shooting.

Viewing the evidence in the light most favorable to the prosecution (see, People v Contes, 60 NY2d 620), we find that it

was legally sufficient to sustain the verdict convicting the defendant of manslaughter in the second degree. The jury was warranted in concluding that the defendant created a substantial and unjustifiable risk by cocking the hammer and playing with a loaded pistol in close proximity to four other individuals and further, that he was aware of the risk and consciously chose to disregard it, as evidenced by his failure to heed the admonitions of his companions to put the gun away (see, Penal Law § 15.05 [3]; § 125.15 [1]; *People v Licitra*, 47 NY2d 554).

We conclude, however, that had it not been for two trial errors, there is a "significant probability * * * that the jury would have acquitted the defendant" *(People v Crimmins*, 36 NY2d 230, 242), and, therefore, reversal is warranted.

Upon taking the stand in his own behalf, the defendant was questioned by the prosecutrix regarding the substance of conversations with the attorney initially consulted by him subsequent to the shooting. Over defense objection, the court summarily ruled that it would permit this line of inquiry, erroneously reasoning that the privilege could be and had been waived by the subject attorney, who apparently contacted law enforcement officials regarding his client's anticipated surrender. The ensuing cross-examination concerned the defendant's alleged admissions to his attorney that he accidentally shot his brother-in-law and that he believed the police were looking for him.

The attorney-client privilege, a creature of statute in this State (CPLR 4503 [a]), "exists to ensure that one seeking legal advice will be able to confide fully and freely in his attorney, secure in the knowledge that his confidences will not later be exposed to public view to his embarrassment or legal detriment" *(Matter of Priest v Hennessy*, 51 NY2d 62, 67-68). In order to invoke the privilege, it must be established by the party asserting it that the attorney-client relationship existed, that the communication was made to an attorney in his capacity as such for the purpose of obtaining legal advice or services and that the information imparted was a "confidential communication" made to the attorney for the purpose of obtaining legal advice or services *(Matter of Priest v Hennessy, supra*, at 68-69). The privilege is that of the client alone *(see,* CPLR 4503 [a]; *People v Shapiro*, 308 NY 453). It is beyond cavil that when a defendant testifies in his own behalf, he may not be cross-examined concerning statements to his attorney *(see, People v Wilkins*, 65 NY2d 172; *People v Glenn*, 52 NY2d 880; *People v Shapiro, supra).*

The People assert that the defendant's argument that the

cross-examination concerning his alleged admissions to his attorney violated the attorney-client privilege should be rejected because the defendant failed to establish at trial that the communication in question was indeed privileged. However, the defendant had no opportunity to argue that the privilege applied because the court precluded such an argument by its summary ruling based on an erroneous construction of the law. Consequently, we cannot accept the People's assertion. On this record, the inquiry was violative of the attorney-client privilege and its impact cannot be minimized, particularly in view of the prosecutrix's comments upon it during her summation and the jury's request and receipt of a readback of the defendant's testimony in this regard.

Furthermore, that the prosecutor's persistent efforts to highlight the significance of the defendant's alleged flight, both throughout the trial and during her summation, in the course of which she cautioned the jury that "only the guilty flee where no man pursue[s]", warranted the issuance of a charge to the jury that proof of flight, while admissible as circumstantial evidence of consciousness of guilt, is a probatively weak species of evidence (see, People v Moses, 63 NY2d 299, 308; People v Montemurro, 125 AD2d 605; 1 CJI[NY] 9.16, at 486-487).

Since there must be a retrial, we note that the court should have given a circumstantial evidence charge. We do not address the parties' remaining contentions. Brown, J. P., Lawrence, Kooper and Spatt, JJ., concur.